**The relief described hereinbelow is SO ORDERED.**

**SIGNED this 4th day of March, 2015.**



_____
Robert D. Berger
United States Bankruptcy Judge

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

**In re:**

**OLEKSANDRA M. OKREPKA,**        Case No. 13-21559
    **Debtor.**        Chapter 13

_____

**MEMORANDUM OPINION AND ORDER GRANTING CREDITOR'S OBJECTION TO PLAN CONFIRMATION, DENYING DEBTOR'S CLAIM OBJECTION, AND GRANTING CREDITOR'S MOTION TO LIFT THE AUTOMATIC STAY**

Comes on for hearing Creditor Ivan Kepych's objection to confirmation of Debtor Oleksandra Okrepka's chapter 13 plan, Debtor's claim objection, and Creditor's motion to lift the automatic stay.[1] The parties agreed that this matter may be submitted on the pleadings and exhibits.[2] The Court, having reviewed the pleadings and counsel's arguments, grants Ivan's

___

[1] Doc. 16, 24, and 28. Debtor, Oleksandra M. Okrepka, appears by her attorney, James W. Lusk, Lenexa, KS; Creditor, Ivan Kepych, appears by his attorney, Christopher Fletcher, Olathe, KS.

[2] Doc. 47, Transcript of Proceedings held March 6, 2014.

15.03.02 Okrepka DSO Judicial Lien Order.wpd

objection to confirmation, denies Oleksandra's claim objection, and grants Ivan's motion to lift the automatic stay.

The Court finds that Oleksandra's divorce obligation to make an equalization payment to Ivan is a property settlement obligation under 11 U.S.C. § 523(a)(15) and is not a domestic support obligation (DSO) because it did not have the purpose and effect of providing support for Ivan.[3] However, because of the divorce court judgment, Ivan holds an *in rem* interest in the marital residence for which Oleksandra's plan does not provide treatment. Ivan's motion to lift the automatic stay is granted for cause under § 362(d)(1) because there is not a reasonable likelihood Oleksandra can propose a confirmable plan.

This Court has jurisdiction under 28 U.S.C. §§ 157 and 1334 to decide the matter in controversy.[4] This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B), (G), and (L). The pleadings do not contest the core nature of this proceeding. Venue is proper pursuant to 28 U.S.C. §§ 1408.

## FACTS

Oleksandra and Ivan married on October 16, 1999, and divorced on October 3, 2007. On July 12, 2004, they purchased a home at 8400 W. 149th Terrace, Overland Park, Kansas (the "Marital Residence"). In May 2006, Oleksandra gave birth to their son (the "Minor Child"). During the marriage, Ivan's annual income from Embarq was approximately $80,000 while

---

[3] All future statutory references are to the Bankruptcy Code (Code), as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 11 U.S.C. §§ 101–1532, unless otherwise specifically noted.

[4] The United States District Court for the District of Kansas refers all cases and proceedings in, under, or related to Title 11 to the District's bankruptcy judges pursuant to the Amended Standing Order of Reference, effective June 24, 2013, referenced in D. Kan. Rule 83.8.5.

Oleksandra was a student with no income.

Ivan filed for divorce on July 7, 2007. Oleksandra did not appear at the divorce proceedings and was found in default. On October 3, 2007, the Johnson County District Court for Kansas (the "Divorce Court") entered its decree of divorce (the "Divorce Decree").[5] Ivan and Oleksandra were granted joint custody of the Minor Child. Ivan was granted residential custody while Oleksandra was granted reasonable parenting time. Ivan was ordered to pay Oleksandra $800 a month commencing October 1, 2007, until the: (a) expiration of 12 months; (b) the death of either party; or (c) Oleksandra's remarriage or cohabitation with an adult, non-relative male in a marriage-like relationship for substantially consecutive periods of time in excess of 30 days (the "Maintenance"). The following was assigned to Ivan: (a) the real property located at 220 Jackson Road, Quenemo, Kansas 66528;[6] (b) the VISA credit card debt; (c) a 2005 Dodge Grand Caravan; (d) all checking and savings accounts held jointly or individually; (e) one half of the parties' personal property divided by their agreement; and (f) Ivan's ownership interest in all his retirement plans, stocks, bonds, IRAs, life insurance policies, and other intangible assets in his name. The following was assigned to Oleksandra: (a) the previously unencumbered Marital Residence valued at approximately $165,000; (b) all student loans; (c) a 2002 Mitsubishi Lancer; (d) one half of the parties' personal property divided by their agreement; and (e) Oleksandra's ownership interest in all her retirement plans, stocks,

---

[5] Doc. 40-1. Ivan and Oleksandra did not agree to a joint marital settlement agreement for the division and ownership of marital property. Instead, the Divorce Court adopted the Divorce Decree prepared by Ivan's attorney because Oleksandra failed to appear at the Divorce Court hearings and was found in default.

[6] This property is separate real property and not part of the Marital Residence.

bonds, IRAs, life insurance policies, and other intangible assets in her name. The Marital Residence was assigned to Oleksandra, subject to Ivan's right to remain in the residence for 120 days from the date of the Divorce Decree. Oleksandra was ordered to pay $55,000 to Ivan within 90 days of Oleksandra's college graduation or the expiration of 12 months, whichever was sooner (the "Equalization Payment").

Additionally, the Divorce Decree included the following clause:

> That all property and monies received or retained by the parties pursuant hereto shall be the separate property of the respective parties, free and clear of any right, title or interest in the other party, and each party shall have the right to deal with and dispose of his or her separate property as fully and effectively as if the parties had never been married. . . .
>
> [T]his Decree itself shall constitute an actual grant, assignment and conveyance of property and rights and in such manner, and with such force and effect, as shall be necessary to effectuate the terms hereof.[7]

Subsequent to the parties' divorce, the Marital Residence became the subject of litigation between Ivan and Oleksandra. In October 2008, Oleksandra failed to make the Equalization Payment. In 2012, Ivan filed a Motion in Contempt and for attorney's fees. In October 2012, the Divorce Court appointed a special master to facilitate the sale of the Marital Residence due to Oleksandra's failure to either refinance or sell the Marital Residence to satisfy the Equalization Payment. Oleksandra failed to cooperate with the special master and comply with the related Divorce Court orders on multiple occasions and was held in contempt. This bankruptcy case stayed enforcement of all state court orders.

On June 19, 2013, Oleksandra filed a chapter 13 voluntary petition for relief and

---

[7] Doc. 40-1 ¶ 15–16, at 3–4.

- 4 -

15.03.02 Okrepka DSO Judicial Lien Order.wpd

proposed chapter 13 plan.[8] Ivan filed an objection to confirmation of Oleksandra's chapter 13 plan on August 9, 2013.[9] Ivan argued Oleksandra's plan was not feasible and lacked good faith because she incorrectly reported her income and failed to accurately record her monthly expenses. On August 24, 2013, Oleksandra responded, arguing that: (a) her income is sufficient to complete her plan payments; and (b) the Equalization Payment is not in the nature of support and therefore dischargeable under § 523(a)(15).[10]

On August 12, 2013, Ivan filed Claim 8-1 in the amount of $73,251, claiming that he is the joint owner and holds a judgment lien on the Marital Residence.[11] On August 27, 2013, Oleksandra objected to Claim 8-1, asserting that there is not a mortgage or lien on the Marital Residence and her obligation to Ivan is dischargeable under § 523(a)(15).[12] On September 10, 2013, Ivan responded, stating that he is a joint owner and holds an equitable lien in the real property.[13]

On September 16, 2013, Ivan filed a motion requesting relief from the automatic stay under § 362(d) to continue pursing satisfaction of the Equalization Payment in state court.[14] Ivan maintained that the debt owed to him is a DSO and because of his equitable lien, Oleksandra should satisfy his claim. Ivan also argued that the Divorce Decree controls whether the debt is a

---

[8] Doc. 1 and Doc. 2.

[9] Doc. 16.

[10] Doc. 21.

[11] There was not a mortgage on the Marital Residence at the time of the divorce.

[12] Doc. 24. Oleksandra did not object to the amount of Ivan's claim.

[13] Doc. 26.

[14] Doc. 28.

15.03.02 Okrepka DSO Judicial Lien Order.wpd

DSO. Oleksandra responded to the motion on September 26, 2013, asserting that: (a) the Divorce Decree sets the Marital Residence over to her; (b) Ivan is not a joint tenant of the Marital Residence; (c) she does owe a debt to Ivan, but the debt is in the nature of a property division, not a DSO; (d) it is for this Court to decide under § 523(a)(5) if the debt is a DSO or property division; and (e) her penurious circumstances should allow her to continue to reside in the Marital Residence.

On March 6, 2014, Oleksandra, Ivan, and the Chapter 13 Trustee, William H. Griffin, appeared before the Court. The parties presented arguments concerning the stay relief motion, Oleksandra's claim objection, and plan confirmation.[15] Due to Ivan and Oleksandra's acrimonious relationship, the parties submitted briefs and the Court took the matter under advisement.

## LAW

Under § 1328(a), a debtor is entitled to a discharge after full compliance with his or her chapter 13 plan. However, § 1328(a) specifies that certain debts cannot be discharged. The 2005 Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA) amendment to § 523(a)(15) provides that a property settlement under § 523(a)(15) is nondischargeable.[16] However, § 523(a)(15) debts are not excepted from discharge in a full compliance chapter 13 case because the § 523(a)(15) exception was not incorporated into § 1328(a). Section 523(a)(15)

---

[15] Doc. 28, 24, and 16.

[16] 4 COLLIER ON BANKRUPTCY ¶ 523.23, at 523-126 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2014). This holds true in individual cases under chapters 7 and 11 and cases under chapter 12 where § 523(a) controls dischargeability. Section 1328(a) controls dischargeability in chapter 13 cases and the § 523(a)(15) exception was not incorporated into § 1328(a).

15.03.02 Okrepka DSO Judicial Lien Order.wpd

provides for the nondischargeability of debts that do not constitute DSOs[17] arising from family law proceedings.[18] Section 523(a)(5) "departs from the general policy of absolution, or 'fresh start,'" to "enforce an overriding public policy favoring the enforcement of familial obligations."[19] In § 523(a)(5), Congress provided the non-filing former spouse the opportunity to breach certain bankruptcy protections and render nondischargeable the debtor's obligations to a former spouse that are in the nature of support. Here, if the Debtor receives a full compliance discharge under § 1328(a), a property settlement under § 523(a)(15) would be dischargeable, while a DSO under § 523(a)(5) would not.

## ANALYSIS

**Debtor asserts the wrong test to determine whether
the Equalization Payment to Creditor is a debt under § 523(a)(15).**

Oleksandra seeks a discharge of the Equalization Payment as a property settlement under § 523(a)(15). She argues that § 523(a)(15):

> . . . excepts from discharge debts incurred through a divorce proceeding other than those covered by 11 U.S.C. § 523(a)(5), unless the debtor can show an inability to pay the debt or that discharging the debt will provide benefits to the debtor that outweighs [sic] any detrimental effects on the former spouse and/or children of the debtor.[20]

However, this characterization regarding the burden of proof analysis under § 523(a)(15)

---

[17] A domestic support obligation (DSO) is an obligation in the nature of alimony, maintenance, or support that arises before, on, or after the filing of the bankruptcy petition under a divorce decree, separation agreement, or other order under state or administrative law. Section 101(14A) fully defines DSOs. The dischargeability of DSOs is addressed under § 523(a)(5).

[18] COLLIER, *supra* note 16.

[19] *See In re Trump*, 309 B.R. 585, 591 (Bankr. D. Kan. 2004) (citing and quoting *In re Sampson*, 997 F.2d 717, 721 (10th Cir. 1993)). *See also* HENRY J. SOMMER & MARGARET DEE MCGARITY, COLLIER FAMILY LAW AND THE BANKRUPTCY CODE ¶ 6.03[1], at 6-13–6-17 (2014). COLLIER, *supra* note 16, ¶ 523.05, at 523-1.

[20] Doc. 40 at 7, citing *In re McFadden*, Adv. No. 05-7143 (Bankr. D. Kan. Oct. 20, 2006).

15.03.02 Okrepka DSO Judicial Lien Order.wpd

is outdated.  Originally enacted in 1994, § 523(a)(15) excepted from discharge debts arising from divorce or separation unless either: (a) the debtor lacked the ability to pay the debt; or (b) discharging the debt would confer a benefit to the debtor that outweighed the detrimental consequences to the spouse, former spouse, or children of the debtor.[21]  In 2005, BAPCPA removed §§ 523(a)(15)(A) and (B), the balancing test controlling dischargeability.[22]  The burden of proof regarding dischargeability actions is by preponderance of the evidence and rests with the objecting nondebtor spouse, former spouse, or child.[23]  The objecting creditor must prove that the debt is one that occurred in the course of a divorce or separation.[24]  Debts arising from a debtor's failure to comply with a divorce decree's property settlement fall within the scope of § 523(a)(15).[25]  The parties' pleadings and associated exhibits establish that the asserted debt arose in the course of Ivan and Oleksandra's divorce.  Furthermore, the parties do not contest that the debt arose from their separation.  Thus, the Court declines to follow Oleksandra's characterization that the debt should be discharged because: (a) she lacks the ability to pay the debt; or (b) discharging the debt would confer a benefit to her that outweighs the detrimental consequences to Ivan and their Minor Child.

---

[21] Former 11 U.S.C. § 523(a)(15)(A), (B), *repealed by* Pub L. No. 109-8, § 215(3).

[22] Pub. L. No. 109-8, § 215(3) (2005).  The change became effective in bankruptcy cases commenced on or after October 17, 2005.  Debtor cited *In re McFadden*, Adv. No. 05-7143 (Bankr. D. Kan. Oct. 20, 2006) (petition filed October 12, 2005), and *In re Hall*, 285 B.R. 485 (Bankr. D. Kan. July 11, 2001) (petition filed July 11, 2001), for her burden of proof analysis.  Both decisions applied the pre-BAPCPA analysis in accord with the October 17, 2006, cutoff.

[23] *Grogan v. Garner*, 498 U.S. 279, 286–87 (1991); SOMMER & MCGARITY, *supra* note 19, ¶ 6.07A[3][c], at 6-107.

[24] SOMMER & MCGARITY, *supra* note 19, ¶ 6.07A[3][c], at 6-107.

[25] SOMMER & MCGARITY, *supra* note 19, ¶ 6.07A[2][a], at 6-103.

**The Equalization Payment to Ivan is not a DSO under § 523(a)(5)
but is a division of property under § 523(a)(15)**

The Court is not bound by the labels applied by the Divorce Court when reviewing the characterization of the Equalization Payment.[26] "[N]either state law nor the parties' characterization determine[] whether a debt [is] nondischargeable under section 523(a)(5)."[27] Whether the Equalization Payment is excepted from discharge under § 523(a)(5) is a matter of federal law based on an inquiry made on a case-by-case basis.[28] Whether the obligation is excepted from discharge under § 523(a)(5) is "a dual inquiry into both the parties's [sic] intent and the substance of the obligation" and the crucial issue is "whether the obligation imposed by the divorce court has the purpose *and* effect of providing support for the spouse."[29] The Court considers the parties' shared intent at the time of the divorce, the substance of the obligation, whether the purpose and effect of the obligation is to provide support to a spouse, a spouse's need for support, and what function the obligation is intended to serve.[30] Here, the intent of the Divorce Court is considered because Oleksandra and Ivan litigated their divorce—as opposed to

---

[26] *In re Rivet*, No. 13-11726, 2014 WL 1876285, at *3 (Bankr. D. Kan. May 8, 2014) (This Court is not bound by labels applied to matrimonial obligations in a state court decree.).

[27] *In re Sampson*, 997 F.2d at 722. The *Sampson* court rejected the suggestion in *Yeates,* 807 F.2d 874 (10th Cir. 1986), that an unambiguous agreement normally controls the court's determination.

[28] *In re Sampson*, 997 F.2d at 721 ("Whether a debt is nondischargeable under § 523(a)(5) is a question of federal law."); *In re Rivet*, 2014 WL 1876285, at *3; *In re Trump*, 309 B.R. at 592; *In re Busch*, 369 B.R. 614, 622 (B.A.P. 10th Cir. 2007) (citing *In re Sampson*, 997 F.2d at 725–26).

[29] *In re Sampson*, 997 F.2d at 723 (quoting 2 HOMER H. CLARK, JR., THE LAW OF DOMESTIC RELATIONS IN THE UNITED STATES § 17.7, at 305 (2d ed. 1987)) (emphasis provided by the *Sampson* court).

[30] *In re Sampson*, 997 F.2d at 726; *In re Yeates*, 807 F.2d at 879; *In re Williams*, 703 F.2d 1055, 1057 (8th Cir. 1983); *see also In re Taylor*, 737 F.3d 670, 676 (10th Cir. 2013) ("When determining whether an obligation is in the nature of alimony, maintenance, or support, this court conducts a 'dual inquiry' looking first to the intent of the parties at the time they entered into their agreement, and then to the substance of the obligation.").

the state court adopting the parties' mutual marital settlement agreement.[31]  The inquiry is whether the Divorce Court believed and found the debt was in fact support, or whether that debt was established by the state court as a means of fairly dividing the parties' assets and liabilities.[32]  The burden of proof to demonstrate nondischargeability is by a preponderance of the evidence and rests with the objecting creditor.[33]

The language establishing the Equalization Payment is contained in paragraph 17 of the Divorce Decree and indicates that "[t]he assets and debts of the parties should be divided as follows . . . ."[34]  This language is indicia of a property division settlement, not a DSO.  The Divorce Court's use of the label "Equalization Payment" in the property division section is persuasive and shows the Divorce Court's intent to divide marital property equally between Oleksandra and Ivan.  Although the Court is not bound by the Divorce Decree's labels, the characterization assigned to the obligation "is persuasive evidence of intent"[35] and the label attached by the Divorce Court "is entitled to great weight."[36]  Paragraph 10 of the Divorce Decree—a separate section—addresses the Maintenance portion of the parties' Divorce Decree.  Under the facts of this case, the separation of the Maintenance and property settlement sections are indicia that the Equalization Payment is a property settlement obligation.

---

[31] SOMMER & MCGARITY, *supra* note 19, ¶ 6.04[2], at 6-28 to 6-29.

[32] *In re Good*, 187 B.R. 337, 338–40 (Bankr. D. Kan. 1995).

[33] SOMMER & MCGARITY, *supra* note 19.

[34] Doc. 40-1 ¶ 17, at 4.

[35] *In re Sampson*, 997 F.2d at 723 (quoting *In re Yeates*, 807 F.2d at 878).

[36] COLLIER, *supra* note 16, ¶ 523.11[6][a], at 523-85.

The substance of Oleksandra's obligation under the second prong of the *Sampson* analysis shows the Equalization Payment is a property settlement obligation. Determining whether Oleksandra's obligation is in the nature of support turns on "the function served by the obligation at the time of the divorce."[37] The function the obligation serves is examined by "considering the relative financial circumstances of the parties at the time of the divorce."[38] Here, the function of the Equalization Payment to Ivan was intended to offset the award of the Marital Residence to Oleksandra. The Equalization Payment is not in the nature of support because Ivan's income was substantially greater than Oleksandra's. Additionally, in a subsequent hearing regarding Oleksandra's failure to make the Equalization Payment, the Divorce Court stated, "Respondent [Oleksandra] was awarded the [Marital] Residence pursuant to the [Divorce] Decree, subject to equalization payment due to Petitioner [Ivan] in the amount of $55,000."[39] Therefore, Oleksandra's obligation to make the Equalization Payment to Ivan is a property settlement obligation.

### Ivan holds an *in rem* judgment lien interest in the Marital Residence under the Divorce Decree

A judicial lien is a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding."[40] In 1988, the United States Court of Appeals for the Tenth Circuit held in *Maus* that an ex-spouse debtor could avoid her ex-spouse creditor's judicial lien

---

[37] *In re Sampson*, 997 F.2d at 725–26 (quoting *In re Gianakas*, 917 F.2d 759, 763 (3d Cir. 1990)).

[38] *In re Sampson*, 997 F.2d at 726.

[39] Doc. 41-5 ¶ 2, at 1.

[40] 11 U.S.C. § 101(36).

15.03.02 Okrepka DSO Judicial Lien Order.wpd

on her homestead under § 522(f)(1).⁴¹  However, in 1991, the Supreme Court of the United States in *Farrey v. Sanderfoot*⁴² abrogated *Maus*.  The Court in *Sanderfoot* held that the ex-spouse creditor's lien could not be avoided under § 522(f)(1) because § 522(f) permits the debtor to "avoid the *fixing* of a lien" and in *Sanderfoot*, the lien did not attach to the debtor's interest in the property.⁴³  However, *Sanderfoot* also explains that the fixing question is a state law concern and *Sanderfoot* follows Wisconsin law.  In Kansas, the *Hilt* court held that the divorce decree at issue granted debtor's interest in the homestead contemporaneously with the lien given to the ex-spouse creditor to equalize the distribution of property.  Furthermore, *Hilt* followed *Sanderfoot* in explaining that "when a divorce court grants one party the homestead and the other a compensating lien by decree, state law determines whether the fixing of the lien has occurred."⁴⁴

In Kansas, courts have recognized the ability of the Divorce Court to impose a lien on a homestead and allow the sale of the homestead to enforce the lien,⁴⁵ ensuring the equitable division of marital property.⁴⁶  Furthermore, "[t]he divorce, and the adjustment of property interests[] are not to be regarded as transpiring at different times, but as contemporaneous."⁴⁷  In Kansas, a divorce decree operates simultaneously with the related judgment liens to affect the

---

⁴¹ *In re Maus*, 837 F.2d 935 (10th Cir. 1988).

⁴² *Farrey v. Sanderfoot*, 500 U.S. 291 (1991).

⁴³ Emphasis added.

⁴⁴ *In re Hilt*, 175 B.R. 747, 750 (Bankr. D. Kan. 1994).

⁴⁵ *Blankenship v. Blankenship*, 19 Kan. 159 (1877).  *See also Bohl v. Bohl*, 234 Kan. 227 (1983) (holding that a homestead may be sold to satisfy a judicial lien arising from a debt for alimony or property division).

⁴⁶ *In re Hilt*, 175 B.R. at 754.

⁴⁷ *In re Hilt*, 175 B.R. at 754 (quoting *Brandon v. Brandon*, 14 Kan. 342, 345 (1875)).

parties' rights.[48] Here, Oleksandra's interest in the Marital Residence arose simultaneously with the lien securing the Equalization Payment.[49] The Divorce Court awarded the Equalization Payment and accompanying lien to Ivan to equalize the distribution of marital assets in a just and reasonable manner. Accordingly, Ivan holds what appears to be an unavoidable judgment lien that created an *in rem* interest in the Marital Residence to the extent of the award of the Equalization Payment and related interest, but not attorney's fees.[50] Ivan's judgment lien remains enforceable against the Marital Residence because the Marital Residence was awarded to Oleksandra subject to the Equalization Payment and judgment lien.

There is not a reasonable likelihood that Oleksandra could propose a confirmable plan. Oleksandra' petition indicates an average monthly income of $1,004.56 with $895 in average monthly expenses for a net monthly income of $109.56. Her plan proposes making $100 monthly payments for 48 months. Furthermore, her proposed plan does not provide for treatment of Ivan's secured judgment lien. Thus, Ivan's motion for relief from the automatic stay is granted for cause under § 362(d)(1) because there is not a reasonable likelihood Oleksandra could propose a confirmable plan based on her income and projected plan payments.

**CONCLUSION**

Oleksandra's obligation to satisfy the Equalization Payment is a dischargeable property

---

[48] *In re Hilt*, 175 B.R. at 754.

[49] *See* Doc. 40-1, *supra* note 7.

[50] "Congress did not aim § 522(f)(1) at judicial liens created to equalize divorce property divisions." *In re Hilt*, 175 B.R. at 754. Regardless, Oleksandra has not attempted to avoid Ivan's lien under § 522(f)(1), an action that may very well be an exercise in futility.

- 13 -

15.03.02 Okrepka DSO Judicial Lien Order.wpd

settlement obligation under § 523(a)(15).[51]  Ivan holds an *in rem* interest in the Marital Residence.

IT IS ORDERED that Creditor Ivan Kepych's objection to confirmation of Debtor Oleksandra Okrepka's chapter 13 plan is GRANTED.

IT IS FURTHER ORDERED that Debtor's objection to Creditor's Claim 8-1 is DENIED as to the secured status of Creditor's claim.

IT IS FURTHER ORDERED that Creditor's motion for relief from the automatic stay to proceed *in rem* is GRANTED.

**IT IS SO ORDERED**.

###

ROBERT D. BERGER
U.S. BANKRUPTCY JUDGE
DISTRICT OF KANSAS

---

[51] Assuming that Oleksandra receives a discharge under § 1328(a).